UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE HAYWOOD S. GILLIAM JR., JUDGE

TIMOTHY ABOUDARA, JR.,     )
ET AL.,                    )
                           )
          PLAINTIFFS,      )     NO. C-17-1661 HSG
                           )
  VS.                      )     THURSDAY, MARCH 29, 2018
                           )
CITY OF SANTA ROSA,        )     OAKLAND, CALIFORNIA
                           )
                           )     MOTION FOR SUMMARY JUDGMENT
                           )
          DEFENDANT.       )
_____)

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**        MASTAGNI HOLSTEDT
                           1921 I STREET
                           SACRAMENTO, CALIFORNIA 95811
                    BY:    IAN B. SANGSTER, ESQUIRE
                           ISAAC S. STEVENS, ESQUIRE


**FOR DEFENDANT:**         RENNE PUBLIC LAW GROUP
                           350 SANSOME STREET, SUITE 300
                           SAN FRANCISCO, CALIFORNIA 94104
                    BY:    ARTHUR A. HARTINGER, ESQUIRE


**REPORTED BY:**           DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                           OFFICIAL COURT REPORTER


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1    THURSDAY, MARCH 29, 2017                    2:11 P.M.

2                      P R O C E E D I N G S

3           THE CLERK:  CALLING C-17-1661 ABOUDARA VERSUS CITY OF

4    SANTA ROSA.

5        PLEASE COME FORWARD AND STATE YOUR APPEARANCES FOR THE

6    RECORD, PLEASE.

7           MR. HARTINGER:  GOOD AFTERNOON, YOUR HONOR.  ARTHUR

8    HARTINGER, RENNE PUBLIC LAW GROUP FOR DEFENDANT.

9           THE COURT:  GOOD AFTERNOON, MR. HARTINGER.

10          MR. SANGSTER:  GOOD AFTERNOON, YOUR HONOR.  IAN

11   SANGSTER ON BEHALF OF PLAINTIFFS.

12          MR. STEVENS:  GOOD AFTERNOON, YOUR HONOR.  ISAAC

13   STEVENS ALSO FOR PLAINTIFFS.

14          THE COURT:  GOOD AFTERNOON TO YOU BOTH.

15       SO WE ARE HERE FOR A HEARING ON THE DEFENDANT'S MOTION FOR

16   PARTIAL SUMMARY JUDGMENT FOCUSED ON ORDER WHETHER THE

17   HOLIDAY-IN-LIEU PAYMENTS AND THE... WHAT'S THE OTHER ACRONYM,

18   SICK LEAVE INCENTIVE PAY, PAYMENTS ARE PROPERLY EXCLUDED FROM

19   THE REGULAR RATE UNDER SECTION 207(E).

20       FIRST QUESTION, SHOULDN'T THIS BE A CROSS-MOTION FOR

21   SUMMARY JUDGMENT?  DOES EVERYONE AGREE THAT ONE WAY OR THE

22   OTHER, I HAVE TO DECIDE THIS AS A MATTER OF LAW?  DOES ANYONE

23   THINK THAT IF I DENY THE SUMMARY JUDGMENT MOTION THAT WE THEN

24   HAVE A TRIAL AT WHICH THIS IS A DISPUTED ISSUE?

25          MR. HARTINGER:  FROM THE DEFENSE PERSPECTIVE, YOUR

HONOR, BASED UPON SAY HOLIDAY-IN-LIEU... PAY FIRST, IF THEIR

ARGUMENTS ARE CORRECT THAT THERE'S THIS DISPUTE ABOUT WHAT

PEOPLE THOUGHT THIS PAY WAS DUE TO AND WHAT IT IS ATTRIBUTABLE

TO, THEN THAT POTENTIALLY DOES BECOME A TRIABLE ISSUE OF FACT,

AND WHERE YOU HAVE TO HAVE WITNESSES TALK ABOUT THEIR RELATIVE

UNDERSTANDINGS, THEIR RESPECTIVE UNDERSTANDINGS OF THE

LANGUAGE AND HOW IT OPERATES.

SO THEY HAVE ALSO RAISED THE ISSUE AS TO WHETHER THERE IS

A TRIABLE ISSUE OF FACT ON LIQUIDATED DAMAGES AND WILLFULNESS.

THAT'S A QUESTION WHERE, AGAIN, I TRIED THOSE CASES BEFORE AND

POTENTIALLY THAT IS A JURY TRIAL ISSUE.

**THE COURT:**  THAT'S A FAIR POINT.  I THINK THE

LIQUIDATED DAMAGES AND WILLFULNESS ARE IN A SEPARATE CATEGORY.

BUT HOW COULD THE LEGAL QUESTION OF WHETHER THESE PAYMENTS

ARE EXCLUDABLE WITHIN THE MEANING OF THE STATUTE BE SUBMITTED

TO A JURY?  ISN'T THAT A MIXED QUESTION OF FACT AND LAW THAT I

WOULD HAVE TO DECIDE AS A MATTER OF LAW?

**MR. HARTINGER:**  I THINK IT'S... IT'S A MIXED QUESTION

OF FACT AND LAW, AND THE JURY WOULD BE -- HAVE TO BE

INSTRUCTED AS TO WHAT THE CRITERIA ARE FOR HOLIDAY-IN-LIEU

PAY.  AND IN ORDER TO -- IF THE COURT IS LOOKING TOWARDS THE

*HART* DECISION AS BEING, YOU KNOW, THE STANDARD IN TERMS OF

WHETHER THE PAY IS DUE TO OR ATTRIBUTED TO HOLIDAYS, YES, IT

GOES TO THE JURY ON THAT QUESTION.

**THE COURT:**  DO YOU HAVE ANY EXAMPLES OF THAT QUESTION

1    EVER BEING TRIED IN ANY CASE THAT YOU CAN CITE?

2           **MR. HARTINGER:**  NOT ON A CASE THAT HAS BEEN CITED.  A

3    CASE THAT I TRIED IN EASTERN DISTRICT THE QUESTION CONCERNED

4    WHETHER THE PLAINTIFFS WERE PAID CORRECTLY, WHETHER THEY WERE

5    PAID TIME AND A HALF CORRECTLY.  IT WAS SORT OF AN INTERESTING

6    TRIAL, LOTS OF CALCULATORS ON THE DAIS AND THERE WAS EXPERT

7    TESTIMONY PRESENTED TO THE JURY.  JUDGE MORRISON.  AND SO

8    THAT'S THE CLOSEST TRIAL I'VE HAD ON IT.

9           **THE COURT:**  BUT HERE I MEAN IT REALLY IS -- IT'S A

10   QUESTION, THOUGH, OF WHETHER THEY -- THESE PAYMENTS FALL

11   WITHIN THE SCOPE OF THE STATUTE, ISN'T IT?  HOW COULD THAT BE

12   PRESENTED TO A JURY?

13          **MR. HARTINGER:**  IT'S A QUESTION OF --

14          **MR. SANGSTER:**  YOUR HONOR --

15          **MR. HARTINGER:**  I WILL YIELD AFTER I RESPOND BRIEFLY,

16   YOUR HONOR.

17     IT'S A QUESTION OF WHAT THE PARTIES' INTENT WAS RELATIVE

18   TO THE CONTRACTUAL ARRANGEMENT IN THE COLLECTIVE BARGAINING

19   AGREEMENT AS TO WHAT THESE PAYMENTS ARE ATTRIBUTABLE TO.

20     AND IT IS INTERESTING TESTIMONY THAT I'M SURE YOUR HONOR

21   HAS REVIEWED RELATIVE TO PEOPLE SAYING, OH, NO, THAT'S NOT

22   REALLY HOLIDAY PAY, THAT'S SOMETHING COMPLETELY DIFFERENT.

23     SO THE FLSA DOESN'T CONTROL THE PARTIES' INTENT IN TERMS

24   OF WHAT IT'S CONTRACTUALLY INTENDED TO -- HOW IT'S

25   CONTRACTUALLY INTENDED TO FUNCTION.  THE FLSA COMES ALONG AND

SAYS, OKAY, IS THIS PAY THAT IS UNDER THE CRITERIA OF EXISTING

LAW SUBJECT TO EXCLUSION UNDER 207(E).  SO THE JURY WOULD

RECEIVE THE -- WOULD -- BY THE WAY, I'M NOT ARGUING FOR THIS.

**THE COURT:**  I THINK YOU KIND OF WERE.

**MR. HARTINGER:**  NO, NO, I'M NOT ARGUING FOR IT.  I

DON'T THINK THAT THERE'S ANY MATERIAL FACTS HERE, AND WE'VE

MADE OUR ARGUMENTS, AND I'M PREPARED TO REAFFIRM WHY I THINK

IT'S SO ABSOLUTELY DEAD-BANG CLEAR THAT THESE PAYMENTS ARE

DIRECTLY ATTRIBUTABLE TO THE HOLIDAY PAY.  I MEAN IT'S EXPRESS

IN THE MOU.

**THE COURT:**  ALL RIGHT.

SO, PLAINTIFFS, IS WHAT I AM DECIDING HERE EITHER

DEFENDANT'S WIN AS A MATTER OF LAW OR WE HAVE A TRIAL?  WHY

DIDN'T YOU MOVE FOR SUMMARY JUDGMENT YOURSELVES?

**MR. SANGSTER:**  THE DEADLINE FOR DISPOSITIVE MOTIONS

IS MAY 3RD, YOUR HONOR, AND WE INTEND TO FILE A MOTION FOR

SUMMARY JUDGMENT, WE JUST HAVE NOT YET DONE SO.  MR. HARTINGER

FILED HIS MOTION FOR SUMMARY JUDGMENT ON THE EVE, IN FACT, OF

THE FACT DISCOVERY CUTOFF.  AND SO WE ABSOLUTELY INTEND TO

FILE A MOTION OF SUMMARY JUDGMENT.

AND, RESPECTFULLY, I WOULD DISAGREE WITH MR. HARTINGER.

AS THIS COURT KNOWS, CONTRACT NOMENCLATURE IS IRRELEVANT TO

THIS COURT'S ANALYSIS.  THE LONGSTANDING CONSTRUCTION OF THE

PAYMENTS OR THE INTENT OF THE PARTIES IS IRRELEVANT.  UNDER

THE FLSA, THIS COURT FOCUSES ON THE CHARACTER AND SUBSTANCE OF

1 THE PAYMENTS, AND I WOULD AGREE WITH THIS COURT THE TIME AND

2 PAYROLL RECORDS SPEAK FOR THEMSELVES.

3 BUT, OF COURSE, DEPENDING ON HOW THIS COURT RULES, THERE

4 COULD BE TRIABLE ISSUES OF FACT WITH REGARDS TO WILLFULNESS

5 AND LIQUIDATED DAMAGES.

6 **THE COURT:** ALL RIGHT.

7 SO THE RECORD OBVIOUSLY IS A SLOG. THE AUTHORITIES CUT

8 DIRECTLY OPPOSITE WAYS. WE'VE GOT A 1999 LETTER FROM THE

9 DEPARTMENT OF LABOR SAYING ONE THING AND A 2006 LETTER

10 APPARENTLY SAYING THE EXACT OPPOSITE THING. I'LL JUST HAVE TO

11 MAKE MY WAY THROUGH IT.

12 IT SEEMED TO ME THAT I WAS SURPRISED THERE SEEMS TO BE A

13 DISPUTE AS TO THIS BASIC POINT, WHICH I WANT TO UNDERSTAND

14 BEFORE I WALK OUT OF HERE TODAY.

15 THE PLAINTIFFS, IN THEIR OPPOSITION, SAY THAT HIL PAY IS

16 COMPENSATION EARNED FOR WORKING ONE'S REGULAR SHIFT WITHOUT

17 REGARD TO WHETHER IT LANDS ON A HOLIDAY. IN THE REPLY, THE

18 DEFENSE IS SAYING, NO, IF YOU HAVE THE DAY OFF, YOU GET THE

19 HIL PAY. AND IF YOU WORK, YOU GET THE HIL PAY PLUS WHAT YOU

20 GET PAID FOR WORKING.

21 WHICH OF -- THOSE CAN'T BOTH BE CORRECT. AND SOMEONE

22 MIGHT BE HURTING THEIR CREDIBILITY WHEN I FIGURE OUT WHICH OF

23 YOU IS WRONG ABOUT THAT.

24 HOW ARE THOSE RECONCILABLE?

25 **MR. HARTINGER:** WELL, MY -- OUR POINT ON THIS, YOUR

HONOR, IS THAT I BELIEVE I POINTED THE COURT TO THE SHIFT
SCHEDULE WHERE YOU HAVE A REGULARLY RECURRING SHIFT THAT IS
PART OF THE EMPLOYMENT RELATIONSHIP AND THEN YOU HAVE IN THE
CONTRACT DESIGNATED HOLIDAYS.

SO BY VIRTUE OF THAT ROTATING SHIFT SCHEDULE, FOR EVERY
YEAR THE FIREFIGHTER KNOWS WHICH HOLIDAYS THEY HAVE THE DAY
OFF AND WHICH HOLIDAYS THEY ARE SCHEDULED TO WORK.  AND THE
MATHEMATICAL FORMULA OF 168 HOURS IS DIRECTLY ATTRIBUTABLE TO
THE VALUE OF THE HOLIDAY THAT'S NEGOTIABLE.

AND I WOULD ALSO JUST WANT TO POINT OUT TO THE COURT, FLSA
SAYS NOTHING ABOUT WHETHER YOU SHOULD EVEN HAVE A HOLIDAY OR
HOW MUCH A HOLIDAY IS WORTH.  SO THERE'S NO DISPUTE IN TERMS
OF THE NEGOTIATED VALUE OF THE HOLIDAY.

SO THE EXAMPLE THAT WE DID IN THE REPLY SORT OF WALKS
THROUGH SOMEBODY ON B SHIFT, AND THEY HAVE A HANDFUL OF
HOLIDAYS THAT THEY WORK, THAT THEY ARE SCHEDULED TO WORK, AND
THEY HAVE A HANDFUL OF HOLIDAYS WHERE THEY HAVE THE DAY OFF
AND ARE ABLE TO OBSERVE THE HOLIDAY.  THEY GET PAID ON A
SALARY BASIS.  THEY GET PAID 192 HOURS OF PAY FOR A 24-DAY
PERIOD.

I WOULD ALSO POINT OUT, YOUR HONOR, THERE'S AN ADMISSION
THAT'S IN THE RECORD AT DOCUMENT 53-2, PAGE 15 OF 8:  ADMIT
THAT HOLIDAY-IN-LIEU PAY IS PAID IN LIEU OF OBSERVING
DESIGNATED HOLIDAYS.  ANSWER:  ADMIT.

**THE COURT:**  BUT JUST REAL SIMPLE.  FIREFIGHTER JONES

1   DOESN'T WORK ON THANKSGIVING.  DOES HE GET THE HIL PAY FOR

2   THAT DAY?

3           **MR. HARTINGER:**  YES, YES, BECAUSE THE NEGOTIATED

4   METHODOLOGY FOR DOING THAT, WHICH IS SET FORTH -- AND I'M --

5   THE NEGOTIATED METHODOLOGY FOR DOING THAT IS TO TAKE THE VALUE

6   OF THOSE HOLIDAYS AND PAY IT OUT UNDER THE OLD MOU IN

7   DECEMBER.

8       SO THEY ARE GETTING THE HOLIDAY-IN-LIEU PAY.  THEY ARE

9   GETTING THE CALCULATED VALUE OF THAT HOLIDAY IN DECEMBER.

10      THAT'S WHAT THE 2006 LETTER OPINION SAID:  THAT'S OKAY,

11  EXCLUDABLE FROM THE REGULAR RATE.

12          **MR. SANGSTER:**  YOUR HONOR --

13          **MR. HARTINGER:**  HE LOOKED AT ALMOST THE PRECISELY

14  SAME SYSTEM AND SAID IT'S... IT'S OKAY TO EXCLUDE IT.

15      THE 1999 OPINION LETTER, WHICH YOUR HONOR CAN OBVIOUSLY

16  LOOK AT, IS TWO PARAGRAPHS.  AND SAYS --

17      AND WE DON'T DISAGREE, BY THE WAY, WITH THE PRINCIPLE, IS

18  THAT YOU CAN'T TAKE PAY AND CALL IT SOMETHING, AND THEN SORT

19  OF, OH, SEE, IT'S HOLIDAY PAY, BUT IT HAS NOTHING TO DO WITH

20  HOLIDAYS.  I AGREE WITH THAT.

21      WHAT WE ARE SAYING HERE IS THE RECORD IS VERY CLEAR THIS

22  IS DIRECTLY ATTRIBUTABLE TO THE HOLIDAYS.  DIRECTLY, IN THE

23  CONTRACT, BY ADMISSION OF THE PLAINTIFFS.

24          **MR. SANGSTER:**  MAY I RESPOND, YOUR HONOR?

25          **THE COURT:**  YOU MAY.

1          **MR. SANGSTER:** THE NOTION THAT ON CERTAIN DAYS

2     DEPENDING ON HOW THE 4896 SCHEDULE PLAYS OUT, THAT THE

3     HOLIDAY-IN-LIEU PAY IS FOR PAID IDLE TIME, AND YET ON OTHER

4     DAYS IS EXTRA PREMIUM COMPENSATION FOR WORKING ON THE HOLIDAYS

5     IS JUST REVISIONIST HISTORY AND SOFT HISTORY.

6          FIREFIGHTERS HAVE NO ENTITLEMENT TO A HOLIDAY SCHEDULE.

7     THAT'S WHY THIS IS IN LIEU OF PAY.  IT'S INSTEAD OF HAVING A

8     FRINGE BENEFIT, IN TERMS OF PAID HOLIDAY LEAVE, THAT OTHER

9     CITY EMPLOYEES ARE ENTITLED TO.

10          THE 168 HOURS IS REALLY IRRELEVANT TO THIS COURT'S

11     ANALYSIS DESPITE MR. HARTINGER'S REPEATED ASSERTIONS.  HE'S

12     FOCUSING ON THE WRONG FORMULA, FRANKLY.

13          IF YOU LOOK AT THE EXHIBIT A TO TIM ABOUDARA'S

14     DECLARATION, WHEN THE HOLIDAY-IN-LIEU PAY WAS INCREASED TO 168

15     HOURS, IT SAYS RIGHT THERE THAT IT'S THE TWELVE DESIGNATED

16     HOLIDAYS TIMES TEN HOURS PER HOLIDAY TIMES 1.4, WHICH IS THE

17     CONVERSION FACTOR BETWEEN 2980 -- EXCUSE ME, 2920, THE NUMBER

18     OF HOURS THAT A FIREFIGHTER WORKS AND 2080 BEING THE NUMBER OF

19     HOURS THAT A NORMAL CIVILIAN EMPLOYEE WOULD WORK.

20          BUT THAT ISN'T HOW THE HOLIDAY-IN-LIEU PAY IS EARNED.  AND

21     THIS IS WHERE THE COURT NEEDS TO FOCUS ON THE *HART* DECISION

22     AND THE *DIETRICK* DECISION BECAUSE THAT IS THE SUBSTANCE OF THE

23     PAYMENT.  NOT -- HE'S CONFLATING THE AMOUNT OF THE PAYMENT

24     WITH HOW IT'S ACTUALLY EARNED.

25          IF YOU TURN TO 18.3.3, THIS IS PARTICULARLY TELLING, AND

HE REFUSES TO CANDIDLY ACKNOWLEDGE THAT HOLIDAY-IN-LIEU PAY

HAS NO CONNECTION TO NON-HOURS OF WORK OR IDLE TIME, BUT

INSTEAD IS DIRECTLY ROOTED IN THE NUMBER OF DAYS THAT AN

EMPLOYEE WORKS.  IN OTHER WORDS, FOR THEIR REGULAR HOURS.

IT'S DIRECTLY LINKED TO THE REGULAR SCHEDULES OF THE

FIREFIGHTERS.

       **THE COURT:**  SO --

           (SIMULTANEOUS COLLOQUY)

       **THE COURT:**  SORRY.  STOP.

       **MR. SANGSTER:**  SORRY.

       **THE COURT:**  IS IT YOUR VIEW THAT BECAUSE THE FORMULA

IS IN PART USING THE NUMBER OF DAYS WORKED AS A MULTIPLIER,

THAT'S THE DISPOSITIVE POINT?

       **MR. SANGSTER:**  ABSOLUTELY.  THE FORMULA DERIVES AN

EFFECTIVE DAILY RATE, AND THAT DAILY RATE IS MULTIPLIED BY THE

NUMBER OF CALENDAR DAYS EMPLOYED.

    THE 168 HOURS IS CERTAINLY PART OF THE JUSTIFICATION FOR

THE AMOUNT OF HOLIDAY-IN-LIEU PAY, BUT, AGAIN, THE CRITICAL

INQUIRY IS HOW THAT HOLIDAY-IN-LIEU PAY IS ACTUALLY EARNED.

AND IT'S EARNED EVERY SINGLE DAY THAT A FIREFIGHTER WORKS.

    IT HAS NO CONNECTION AND IS COMPLETELY BLIND TO ANY IDLE

TIME OR NON-WORK HOURS, WHICH IS EXCLUDABLE UNDER 207(E)(2).

THAT'S WHAT, IN OUR VIEW, RESPECTFULLY, DEFENDANT CANNOT

RECONCILE THAT 207(E)(2) DEALS WITH NON-WORK HOURS.  HERE, IT

IS JUST THE OPPOSITE.  THE AMOUNT OF HIL COMPENSATION THAT IS

EARNED UNDER THE LABOR CONTRACT IS DIRECTLY LINKED TO THE

AMOUNT OF WORK PERFORMED IN A CALENDAR YEAR.

       **THE COURT:**  WHY IS THAT NOT TRUE?

       **MR. HARTINGER:**  ALL I WOULD SAY IS TAKE YOU TO THE

MOU THAT TALKS ABOUT THE CALCULATION OF THE VALUE OF A

HOLIDAY, WHICH IS AT PAGE 45.

    FLSA DOESN'T HAVE ANYTHING TO DO WITH HOW THE PARTIES

AGREE TO VALUE A HOLIDAY.  IT DOESN'T CONTROL WHETHER TO GIVE

VACATION, IT DOESN'T CONTROL WHETHER TO GIVE LEAVE TIME, IT

DOESN'T DO A LOT OF THINGS THAT STATE LABOR LAW DOES.

    SO PARTIES HAVE AGREED, THEY CAME UP WITH A FORMULA

RECOGNIZING THAT ON ANY GIVEN DAY, THE FIREFIGHTERS WERE GOING

TO NOT HAVE THE FRINGE BENEFIT OF HAVING THE DAY OFF.  SO THEY

VALUE THE VALUE OF THE HOLIDAY, AND THEY VERY PRECISELY

CALCULATED IT OVER THE PERIOD OF A YEAR.

    AND IT'S JUST, TO ME, IT'S JUST SO CRYSTAL CLEAR.  BECAUSE

THE MOU DESIGNATES THE HOLIDAYS AND IT DESIGNATES THE VALUE OF

THE HOLIDAY.  AND IT PAYS THESE FOLKS, THE FIREFIGHTERS, FOR

WHEN THEY -- WHEN THEY WORK THE HOLIDAY, THEY GET PAID THEIR

REGULAR PAY.  WHEN THEY DON'T WORK THE HOLIDAY, THEY GET PAID

THE IN-LIEU PAY BECAUSE THAT'S WHAT THE CONTRACT SAYS.

    AND, YOUR HONOR, I WOULD MOVE -- YOU KNOW, IF YOU -- THE

REGULATIONS AT 778.218(A) SPECIFICALLY SAY THAT IF YOU HAVE

THESE KINDS OF PAYMENTS FOR HOLIDAY, AND THEY MAY BE EXCLUDED

FROM THE REGULAR RATE, AND THEY ARE DEFINED AS HOLIDAYS.

THE LIMITATIONS ON EXCLUSION, THE TERM "HOLIDAY" IS READ

IN ITS ORDINARY USAGE TO REFER TO THOSE DAYS CUSTOMARILY

OBSERVED IN THE COMMUNITY.

SO, YOU KNOW, OUR ISSUE WITH *HART*, YOUR HONOR, IS THAT THE

COURT SAID, HEY, YOU'VE -- YOU HAVE TO PAY THE HOLIDAY PAY AT

THE TIME OF THE HOLIDAY. AND THAT'S WHY THE PARTIES WHEN

THIS -- WE CAN GET INTO THE ISSUE OF HOW THE CITY RESPONDED TO

THIS ISSUE THAT WAS RAISED, SAID, OKAY, LET'S NEGOTIATE NEW

LANGUAGE WHERE THE HOLIDAY-IN-LIEU PAY THEN IS PAID IN THE

SAME PAY PERIOD THAT THE HOLIDAY OCCURS.

AND THE FIRE UNION SIGNED OFF ON IT. EVERYBODY -- THIS

WAS A FIX. NOW THEY'VE TURNED AROUND AND SAID, NO, NO, THAT

DOESN'T FIX IT. I'M AT THE TABLE WITH THEM NOW AND THEY'RE

STILL SAYING IT DOESN'T FIX IT. IT'S NOT FIXABLE.

SO THE OTHER THING THAT I WOULD DIRECT THE COURT TO IS THE

FIELD OPERATIONS HANDBOOK, YOUR HONOR, WHICH HAS A SPECIFIC

SECTION THAT SAYS YOU HAVE TO HAVE THREE CRITERIA FOR THESE

KINDS OF SITUATIONS WHERE SOMETIMES YOU ARE GETTING A

PROPORTIONATE PART OF YOUR FRINGE BENEFITS, INCLUDING HOLIDAY

PAY, PAID OUT.

AND IT SAYS SUCH PAYMENTS MAY BE EXCLUDED FROM THE REGULAR

RATE PROVIDED, ONE, THEY REPRESENT BONA FIDE FRINGE BENEFITS,

TO WHICH THERE'S NO DISPUTE ON THAT ISSUE. TWO, THEY ARE THE

CASH EQUIVALENTS OF THE BENEFITS. THEY CLEARLY ARE THE CASH

EQUIVALENT IN THAT IT'S A NEGOTIATED VALUE. AND, THREE,

1    THERE'S A CLEAR UNDERSTANDING BETWEEN THE EMPLOYER AND

2    EMPLOYEE THAT THE PAYMENTS ARE IN LIEU OF SUCH FRINGE

3    BENEFITS, AND JUST READ THE ADMISSION WHERE THEY ADMIT THAT.

4        SO --

5        **THE COURT:** BUT WHAT WEIGHT DO I GIVE -- IT SEEMS TO

6    ME THAT AT BEST, THE DEPARTMENT OF LABOR AUTHORITY ON THIS IS

7    MUDDLED. WE'VE GOT DUELING LETTERS, WE'VE GOT THE HANDBOOK;

8    IN THE END, HOW MUCH WEIGHT DOES IT EVEN GET?

9        **MR. HARTINGER:** IT GETS MORE DEFERENCE. IT'S THE --

10   LOOKING AT IT, WHAT IS THE POWER TO PERSUADE THE COURT. AND

11   ONE OF OUR ARGUMENTS IS, YOUR HONOR, IF YOU LOOK AT THE '99

12   LETTER VERSUS THE 2006 LETTER, THE -- YOU DON'T HAVE ANY

13   FACTUAL CONTENT IN THE '99 BACKGROUND AS TO WHAT THAT

14   5 PERCENT IS. THEY WERE JUST PAYING 5 PERCENT AND CALLING IT

15   HOLIDAY PAY.

16       AND THAT IS NOT THE CASE HERE. OUR FACTS ARE ON ALL FOURS

17   WITH THE 2006 LETTER OPINION WHERE THE COURT LOOKED AT A

18   SIMILAR SYSTEM AND SAID, OKAY, IT'S EXCLUDABLE.

19       SO I DON'T THINK THAT THE DOL STUFF IS MUDDLED, YOUR

20   HONOR, IN THIS SENSE. THERE'S AGREEMENT. WE AGREE, THEY

21   AGREE. YOU CAN'T JUST TAKE A PAY TYPE AND CALL IT SOMETHING

22   AND THEN HAVE THAT PASS MUSTER.

23       BUT THAT'S NOT WHAT WE HAVE HERE. WE HAVE A HOLIDAY

24   SYSTEM THAT WAS NEGOTIATED AND DIRECTLY ATTRIBUTABLE. THE

25   FORMULA IS IN THE CONTRACT. AND IT -- TO ME, JUST GOING

1    THROUGH THE STATUTES AND THE REGULATIONS THAT ARE ON POINT

2    HERE, IT LEADS YOU TO THAT POSITION.

3        AND EVEN IF YOU GO TO *HART*, WHICH OUR ISSUE WITH *HART* IS,

4    WHAT IS THE... WHAT IS THE MATERIAL INTELLECTUAL DISTINCTION

5    THAT FURTHERS THE INTEREST OF THE FAIR LABOR STANDARDS ACT TO

6    CARE WHETHER THERE'S SOMETHING'S PAID IN A LUMP SUM VERSUS

7    PAID ON SOME OTHER BASIS.

8        IT'S THE SAME AMOUNT OF MONEY.  THERE'S JUST NO RATIONAL

9    BASIS TO SUGGEST THAT THE FEDERAL LAW CARES ABOUT THAT.

10            **THE COURT:**  I'M NOT SURE THAT I READ *HART* AS BEING

11   BASED ON THE LUMP SUM DISTINCTION VERSUS SOMETHING ELSE.  I

12   MEAN, OBVIOUSLY THAT WAS THE FACT SCENARIO THERE, BUT IT

13   REALLY COMES DOWN TO THE ANALYSIS OF WHETHER THE PAYMENTS ARE

14   DUE TO A HOLIDAY SO AS TO FALL UNDER 702(E), AND REALLY THE

15   QUESTION IS WITHOUT REGARD TO WHETHER WORK IS PERFORMED,

16   RIGHT?

17            **MR. SANGSTER:**  YOUR HONOR, IF I MAY?

18            **MR. HARTINGER:**  RIGHT.

19            **THE COURT:**  LAST WORD ON THIS POINT, AND THEN WE'LL

20   TALK BY THE SIL.

21            **MR. SANGSTER:**  I JUST WANTED TO TAKE A MOMENT TO

22   POINT OUT JUDGE CHESNEY ACTUALLY SPECIFICALLY DISCLAIMED

23   RELIANCE UPON THE TIMING OF THE PAYMENTS IN HER DECISION.  HER

24   QUOTE WAS, "THE COURT IS NOT PERSUADED THAT THE TIMING OF A

25   PAYMENT NECESSARILY DEFINES ITS CHARACTER."

1    AGAIN, AS WE LAID OUT IN MORE DETAIL IN OUR OPPOSITION

2    PAPERS, SHE LOOKED TO WHETHER OR NOT THERE WAS ANY MEANINGFUL

3    CONNECTION BETWEEN THE COMPENSATION AND ANY IDLE TIME OR

4    NON-WORK HOURS.  IT WAS LABELED AS IF IT PERTAINED TO.

5    AND THIS IS PRECISELY WHY *DIETRICK* CITED IT APPROVINGLY,

6    AND *DIETRICK* IS ACTUALLY SQUARELY ON POINT HERE BECAUSE

7    ALTHOUGH IT DEALT WITH VACATION PAY, AND I UNDERSTAND

8    MR. HARTINGER WILL ARGUE THAT THE AMOUNT WAS DIFFERENT, BUT,

9    AGAIN, THE AMOUNT IS NOT RELEVANT TO THIS COURT'S ANALYSIS,

10   IT'S HOW THE COMPENSATION IS EARNED.  AND, AGAIN, IT WAS

11   ROOTED IN TIME SPENT ACTUALLY WORKING.

12   IF I MAY ADDRESS THE OPINION LETTERS BRIEFLY?

13   I THINK THEY CAN ACTUALLY BE HARMONIZED QUITE EASILY.  THE

14   2006 LETTER IS REPLETE WITH FACTUAL DIFFERENCES THAT ARE NOT

15   JUST SIGNIFICANT BUT LEGALLY SIGNIFICANT.  AND DEFENDANT'S PMK

16   MADE BINDING ADMISSIONS DURING HER PMK TESTIMONY THAT THESE

17   DIFFERENCES EXISTED.

18   IN -- FOR THE SAKE OF BREVITY, I WILL JUST POINT TO ONE.

19   WITH REGARD TO THE FLOATING HOLIDAYS, THE VERBIAGE OF USED OR

20   UNUSED SEEMS TO CONFIRM THAT THERE WAS A LEAVE BANK PRESENT IN

21   THAT PARTICULAR SITUATION, AND WE WOULD AGREE THAT IF THERE

22   WAS A LEAVE BANK THAT IS BEING CASHED OUT, THAT WOULD BE

23   EXCLUDED UNDER 207(E)(2) AND THE INTERPRETIVE REGULATION.

24   IN CONTRARY TO MR. HARTINGER'S ASSERTION, THE 1999 LETTER

25   DOES CONTAIN SOME FACTS, ADMITTEDLY IT'S THIN, BUT THE

1    LANGUAGE PERFECTLY TRACKS THE LANGUAGE OF ARTICLE 18.3.3 --

2    EXCUSE ME, 18.3 WHERE THE PAY IS RECEIVED -- IT'S IN-LIEU

3    COMPENSATION QUOTE "WITHOUT REGARD FOR WHEN HOLIDAYS OCCUR OR

4    WHETHER THE UNIT MEMBER ACTUALLY WORKS."  AND THAT'S PRECISELY

5    THE SITUATION IN SANTA ROSA.

6        AND FINALLY WITH REGARD TO THE FIELD OPERATIONS HANDBOOK,

7    DEFENDANT HAS FAILED TO ESTABLISH THAT IT EVEN APPLIES TO

8    PLAINTIFFS.  PLAINTIFFS ARE SALARIED NONEXEMPT EMPLOYEES WHO

9    WORK IN PUBLIC SAFETY AS FIREFIGHTERS, AND CHIEF GOSSNER'S

10   INADMISSIBLE SPECULATION AS TO WHAT SECONDARY EMPLOYMENT SOME

11   FIREFIGHTERS MAY MAINTAIN DUE TO 4896 SCHEDULE IS ULTIMATELY

12   IRRELEVANT BECAUSE MAINTAINING SECONDARY EMPLOYMENT IS

13   DRAMATICALLY DIFFERENT THAN WORKING FOR SEVERAL DIFFERENT

14   EMPLOYERS THROUGHOUT THE COURSE OF THE YEAR BECAUSE OF THE

15   PARTICULAR INDUSTRY THAT YOU WORK IN.

16       IN FACT, IT APPEARS DESIGNED TO ACCOUNT FOR THE UNIQUE

17   CHARACTER OF THE CONSTRUCTION INDUSTRY WHEN WORKING ON

18   PROJECTS WITH A PREVAILING WAGE.  SPECIFICALLY, THE

19   DAVIS-BACON ACT, WHICH IS 40 U.S.C., SECTION 31412, IT TALKS

20   ABOUT THE MINIMUM WAGE BEING THE BASIC HOURLY RATE AS WELL AS

21   BONA FIDE FRINGE BENEFITS THAT ARE PREVAILING IN THE INDUSTRY.

22   AND THE INTERPRETIVE REGULATIONS ARE IN ACCORD.  31 -- THE

23   TERMINOLOGY OF BONA FIDE FRINGE BENEFIT COMES DIRECTLY FROM

24   31412(B) AND IS DISCUSSED AT 29 C.F.R. SECTION 5.29.

25           **THE COURT:**  ALL RIGHT.  IS THIS IN YOUR BRIEF?

1            **MR. SANGSTER:**  IT'S NOT.

2            **THE COURT:**  THEN TOO LATE.  TOO LATE.

3            **MR. SANGSTER:**  UNDERSTOOD, YOUR HONOR.

4       BUT WE DID GO TO GREAT LENGTHS TO DISTINGUISH THE FIELD

5   OPERATIONS HANDBOOK.  AND EVEN IF IT DOES APPLY, IT FLIES IN

6   THE FACE OF THE MANDATE OF *FLORES* THAT CASH PAYMENTS IN LIEU

7   OF A FRINGE BENEFIT MUST BE INCLUDED IN THE REGULAR RATE.

8         AND, FINALLY, EVEN IF THE COURT FINDS THAT THE FIELD

9   OPERATIONS HANDBOOK, WHICH HAS NEVER BEEN CITED BY ANY COURT

10  OR INTERPRETED IN ANY MEANINGFUL WAY IS APPLICABLE TO

11  PLAINTIFFS.  AND EVEN IF THE COURT FINDS THAT PAYING CASH IN

12  LIEU OF FRINGE BENEFITS DOESN'T VIOLATE THE NINTH CIRCUIT'S

13  MANDATE IN *FLORES*, THEN THE FIREFIGHTERS HERE WOULD STILL FAIL

14  THE TEST BECAUSE IT REQUIRES THE CASH EQUIVALENT.

15      HERE, THEY RECEIVE COMPENSATION AT THE BASE RATE.  AND

16  EVEN MR. HARTINGER ACKNOWLEDGES THAT THEIR COMPENSATION UP TO

17  33 PERCENT INCLUDES DIFFERENT PAY ENHANCEMENTS AND INCENTIVES

18  AND OTHER SPECIALTY PAYS, AND HE ACCUSES US OF READING AN

19  ELEMENT INTO THE STATUTE BUT -- EXCUSE ME, THE HANDBOOK, BUT

20  THE WORD "EQUIVALENT" COMES DIRECTLY FROM THE HANDBOOK.  AND

21  EQUIVALENT MEANS EQUAL TO.

22      SO THEY DON'T MEET THE TEST EVEN IF IT IS APPLICABLE AND

23  EVEN IF IT DOESN'T VIOLATE *FLORES*.

24            **THE COURT:**  OKAY.

25            **MR. HARTINGER:**  I TAKE IT YOU DON'T WANT A RESPONSE?

1    **THE COURT:** I DON'T.

2    **MR. HARTINGER:** BECAUSE I HAVE ONE.

3    **THE COURT:** YOUR INSTINCTS ARE IMPECCABLE.

4    ALL RIGHT. AND THEN WITH REGARD TO THE SICK LEAVE

5    INCENTIVE PAYMENT, DOES EVERYONE AGREE THAT REALLY THE

6    QUESTION IS WHETHER THAT IS AN INCENTIVE PAID FOR ATTENDANCE

7    OR ESSENTIALLY A CASH EQUIVALENT OF UNUSED LEAVE?

8    I SAW *BALESTRIERI*. *BALESTRIERI* SAID BOTH ISSUES ARE

9    DEBATABLE AGAIN. IT SEEMS TO ME TO BE AN ISSUE OF FIRST

10   IMPRESSION IN THIS CIRCUIT THAT I WILL JUST HAVE TO FIGURE

11   OUT.

12   BUT ANYTHING TO ADD TO YOUR PAPERS THAT YOU WANT TO BRING

13   TO MY ATTENTION IN PARTICULAR? I DON'T NEED A REPEAT.

14   **MR. HARTINGER:** OKAY. I APPRECIATE THAT, YOUR HONOR.

15   THE ONLY THING I WOULD ADD IS THAT WE DO THINK *BALESTRIERI*

16   IS THE PLACE TO BEGIN. AND THAT COURT BASICALLY BLESSED A

17   SYSTEM OF ALLOWING -- ASSUMING A FIREFIGHTER HAD A MINIMUM

18   LEVEL OF PTO AT THE END OF THE YEAR, YOU COULD CASH IT OUT.

19   IN OTHER WORDS, YOU GET PAID FOR BEING INCENTIVIZED NOT TO USE

20   YOUR LEAVE.

21   AND OUR POINT IS, ON THE SICK LEAVE INCENTIVE, WHAT'S THE

22   DIFFERENCE IF YOU DO IT THAT WAY VERSUS SAYING, OKAY, KEEP A

23   MINIMUM AMOUNT OF SICK LEAVE IN YOUR BALANCE, AND IF YOU HAVE

24   THAT MINIMUM AMOUNT OF SICK LEAVE IN YOUR BALANCE, THEN YOU

25   GET 24 HOURS EXTRA PAY. THERE'S NO INTELLECTUAL DIFFERENCE,

1   AND THAT'S OUR ARGUMENT, YOUR HONOR.

2       **THE COURT:**  ALL RIGHT.  LAST WORD ON THIS POINT?

3       **MR. SANGSTER:**  I WON'T REHASH WHAT'S IN OUR PAPERS.

4   OUR POSITION IS THAT IT'S AN ATTENDANCE BONUS, A

5   NON-DISCRETIONARY BONUS THAT THEY RECEIVE AUTOMATICALLY FOR

6   USING LESS THAN A DESIGNATED NUMBER OF HOURS IN SICK LEAVE.

7       **THE COURT:**  ALL RIGHT.

8      OKAY.  I WILL TAKE THE MOTION UNDER SUBMISSION.  AND I

9   WILL AIM TO GET YOU AN ANSWER AS SOON AS I CAN DO THAT.

10  THERE'S NO SCHEDULE BEYOND THIS IN THE CASE, IS THERE?  OR DO

11  WE HAVE A DATE SET?

12      **MR. HARTINGER:**  WE HAVE -- THE NEXT DATE FOR US TO DO

13  SOME WORK IS EXPERT DISCLOSURES, AND I BELIEVE THAT'S IN JUNE

14  IF I'M NOT MISTAKEN.  NOT SURE.

15      **THE COURT:**  GOT IT.  ALL RIGHT.  DO WE HAVE ANY COURT

16  DEADLINES THAT HAVE BEEN SET IN THE CASE FOR FURTHER MOTIONS

17  OR TRIAL?  I JUST CAN'T REMEMBER.

18      **MR. SANGSTER:**  DISPOSITIVE MOTIONS, YOUR HONOR, I

19  BELIEVE IS MAY 3D, AND WE WILL BE FILING OUR MOTION FOR

20  SUMMARY JUDGMENT.

21      **THE COURT:**  ALL RIGHT.

22      **MR. HARTINGER:**  AND LASTLY, YOUR HONOR, I WOULD JUST

23  SAY THIS AREA OF THE LAW CAN MAKE YOUR HEAD SPIN.

24      **THE COURT:**  YOU DON'T SAY.

25      **MR. HARTINGER:**  IT'S ALMOST LIKE HOW MANY ANGELS ARE

DANCING ON THE HEAD OF A PIN?  AND THIS IS WHY I HAVE MY TENTH

AMENDMENT ARGUMENT BECAUSE I'M A TRUE BELIEVER THAT THERE'S NO

FEDERAL INTEREST INTRUDING ON A CONTRACTUAL, LONGSTANDING

CONTRACTUAL ARRANGEMENT IN A LOCAL MUNICIPAL GOVERNMENT

MESSING WITH THEIR BUDGET WITH FIREFIGHTERS WHO, ON AVERAGE,

MAKE OVER 235,000 A YEAR.

THIS WHOLE AREA IS WHAT IT IS, AND I KNOW THAT YOU HAVE AN

ARTICLE III RESPONSIBILITY TO DEAL WITH IT, BUT THAT'S MY

PITCH.

AND THE LAST THING I WOULD SAY IS, IF THE COURT WANTS

FURTHER BRIEFING BECAUSE WE DIDN'T REFINE SOMETHING, YOU KNOW,

PLEASE, PLEASE ASK.  WE WOULD INVITE YOU TO DO THAT IF IT

HELPS THE COURT.

**THE COURT:**  I APPRECIATE THAT.  I WILL LET YOU KNOW.

**MR. SANGSTER:**  THANK YOU, YOUR HONOR.  APPRECIATE IT.

**MR. HARTINGER:**  THANK YOU, YOUR HONOR.

**THE COURT:**  YOU'RE WELCOME.

**MR. STEVENS:**  THANK YOU, YOUR HONOR.


(PROCEEDINGS CONCLUDED AT 2:39 P.M.)

1

2

3                        **CERTIFICATE OF REPORTER**

4              I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

5    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

7    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9                        _Diane E. Skillman_

10             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

11                   WEDNESDAY, MAY 9, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25