```
PAGES 1 - 13

                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE JUDGE HAYWOOD S. GILLIAM

TIMOTHY ABOUDARA, JR., ET AL.,  )
                                )
                    PLAINTIFFS, ) NO. 17-01661 HSG
VS.                             )
                                ) OAKLAND,
                                ) CALIFORNIA
                                ) THURSDAY
CITY OF SANTA ROSA,             ) JULY 19, 2018
                                )
                     DEFENDANT. )
_____) 2:00 O'CLOCK P.M.
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:
MASTAGNI HOLSTEDT
1912 I STREET
SACRAMENTO, CALIFORNIA 95811
BY:  IAN B. SANGSTER, ESQUIRE

FOR DEFENDANT:
RENNE PUBLIC LAW GROUP
350 SANSOME STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94104
BY:  ARTHUR A. HARTINGER, ESQUIRE
     SPENCER WILSON, ESQUIRE
     RYAN MCGINLEY-STEMPEL, ESQUIRE

*REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*

```
 1   JULY 19, 2018                           2:00 O'CLOCK P.M.
 2
 3                       P R O C E E D I N G S
 4            THE CLERK:  WE'RE CALLING C17-1661, ABOUDARA
 5   VERSUS CITY OF SANTA ROSA.  PLEASE STEP FORWARD AND STATE
 6   YOUR APPEARANCES FOR THE RECORD.
 7            MR. HARTINGER:  GOOD AFTERNOON, YOUR HONOR.
 8   ARTHUR HARTINGER FOR DEFENDANT.  AND I'M ALSO APPEARING
 9   WITH SPENCER WILSON AND RYAN MCGINLEY-STEMPEL.
10            THE COURT:  GOOD AFTERNOON.
11            MR. SANGSTER:  GOOD AFTERNOON, YOUR HONOR.  IAN
12   SANGSTER APPEARING ON BEHALF OF PLAINTIFFS.
13            THE COURT:  ALL RIGHT.  GOOD AFTERNOON, MR.
14   SANGSTER.
15                 SO WE'RE HERE FOR A HEARING ON TWO MOTIONS.
16   ONE IS THERE'S ANOTHER MOTION FOR SUMMARY JUDGMENT THAT'S
17   BEEN FILED.  BUT, REALLY, I THINK THE THRESHOLD MOTION THAT
18   I WANT TO DISCUSS IS THE MOTION TO STAY.
19                 SO I'VE READ THE PAPERS AND MY IMPRESSION IS
20   THAT THE DEFENDANT IS CORRECT, THAT THERE'S A SIGNIFICANT
21   CHANCE THAT THE DOL'S PROPOSED RULE MAY SHED SOME REAL
22   LIGHT ON THE ISSUES HERE.
23                 I KNOW THE PLAINTIFFS' POSITION IS THAT THE
24   LAW IS CLEAR.  I CAN TELL YOU FROM THIS SEAT IT ISN'T, AS
25   I'VE SAID IN THE ORDERS I'VE ISSUED PREVIOUSLY.  AND
```

1  ESPECIALLY GIVEN THAT WHAT WE'RE TALKING ABOUT IS
2  SEPTEMBER, I DON'T SEE ANY REASON TO FORGE AHEAD HERE AND
3  TRY TO DIVINE WHAT THE RIGHT OUTCOME WOULD BE.
4          I THINK HAVING THE GUIDANCE THAT THE
5  DEPARTMENT OF LABOR MAY PROVIDE POSES A SIGNIFICANT
6  LIKELIHOOD OF BEING HELPFUL.  AND IN SEPTEMBER WE CAN SEE
7  WHAT HAPPENS AND EVALUATE AT THAT POINT.  BUT I DON'T SEE
8  ANY REASON NOT TO PUT THINGS ON HOLD UNTIL THEN.  I THINK
9  THAT THIS COULD SUBSTANTIALLY SIMPLIFY THIS CASE, DEPENDING
10 ON WHAT THE DEPARTMENT OF LABOR COMES OUT WITH.
11         **MR. SANGSTER:**  OBVIOUSLY, PLAINTIFFS DISAGREE.
12 OUR PRIMARY ISSUE AT THIS POINT IS THAT WE SIMPLY DO NOT
13 KNOW WHAT, IF ANY, RELEVANCE ANY PROPOSED RULE WILL HAVE ON
14 THIS PARTICULAR MATTER.
15         AS WE BRIEFED, SECTION 207 (E) (2) HAS SEVERAL
16 DISTINCT COMPONENTS.  AND THE PROPOSED RULEMAKING, IF IT
17 EVEN TOUCHES UPON SECTION 7 (E) (2), AS WE ALSO BRIEFED,
18 THERE'S ANOTHER CITATION TO THE CODE OF FEDERAL REGULATIONS
19 THAT DISCUSSES THE BONA FIDE THRIFT AND SAVINGS PLAN, WHICH
20 IS (E) (3).  FRANKLY, IT'S NOT EVEN CLEAR THAT THE (E) (2)
21 IN THE ABSTRACT ISN'T ANYTHING MORE THAN A TYPO.  AND --
22         **THE COURT:**  WELL, REALLY?  I MEAN, IT SAYS -- DO
23 YOU DISAGREE IT SAYS FLAT OUT THAT THE -- "IN THIS NOTICE
24 OF PROPOSED RULEMAKING THE DEPARTMENT WILL PROPOSE TO AMEND
25 29 CFR PART 778 TO CLARIFY, UPDATE AND DEFINE REGULAR RATE

| | |
|---|---|
| 1 | REQUIREMENTS UNDER SECTION 7 (E) (2) OF THE ACT." |
| 2 | WHAT REASON DO WE HAVE TO THINK THAT'S A TYPO |
| 3 | AS OPPOSED TO AN IDENTIFICATION OF THE SUBJECT MATTER OF |
| 4 | THE PROPOSED RULE? |
| 5 | **MR. SANGSTER:** THE CFR CITATION JUST A FEW LINES |
| 6 | BELOW, YOUR HONOR, CITES TO 29 CFR 547, WHICH DISCUSSES THE |
| 7 | REQUIREMENTS OF A BONA FIDE THRIFT AND SAVINGS PLAN UNDER |
| 8 | (E) (3). |
| 9 | **THE COURT:** SO WHY COULDN'T THAT -- |
| 10 | **MR. SANGSTER:** THERE'S ALSO -- |
| 11 | **THE COURT:** WHY COULDN'T THAT INDICATE THAT THEY |
| 12 | ARE PLANNING TO POTENTIALLY ADDRESS BOTH? |
| 13 | **MR. SANGSTER:** IT COULD.  IT CERTAINLY COULD. |
| 14 | THAT'S PART OF OUR ISSUE.  THE FACT OF THE MATTER IS WE'RE |
| 15 | GUESSING, JUST AS MUCH AS MR. HARTINGER IS GUESSING AS TO |
| 16 | WHAT, IF ANY, RELEVANCE ANY PROPOSED RULE WILL HAVE ON THIS |
| 17 | PARTICULAR MATTER. |
| 18 | AND THE FACT OF THE MATTER IS DISTRICT COURTS |
| 19 | HAVE ORIGINAL JURISDICTION OVER CLAIMS UNDER THE FLSA. |
| 20 | THEY DECIDE THESE ISSUES EVERY SINGLE DAY.  (E) (2) -- |
| 21 | **THE COURT:** AND I DON'T THINK -- I DON'T EVEN |
| 22 | THINK I HAVE TO GET TO THE PRIMARY JURISDICTION ASPECT.  IF |
| 23 | WE GET TO SEPTEMBER, AND YOU ARE RIGHT AND THE RULE, WHICH |
| 24 | WOULD BE SOMEWHAT SURPRISING, IN ANY VIEW, DOESN'T ADDRESS |
| 25 | SECTION 7 (E) (2), THEN WHY CAN'T I SAY: "STAY'S LIFTED," |

AND WE PLOW FORWARD?  WHAT'S THE HARM?

**MR. SANGSTER:**  THE HARM IS THAT PLAINTIFFS ARE CONTINUING TO BE DEPRIVED FROM OVERTIME COMPENSATION.  AND JUST FOR ARGUMENT'S SAKE, IF IT DOES HAVE ANY RELEVANCE, NOW WE'RE POTENTIALLY IN A HOLDING PATTERN AS WE BRIEFED A DIFFERENT SET OF CIRCUMSTANCES WHEN NOTICE AND COMMENT WAS SOUGHT AND HOW LONG IT TOOK FOR THAT PARTICULAR PROPOSED REGULATION TO GO INTO EFFECT.  AND THEN, ULTIMATELY, IT NEVER WENT INTO EFFECT.

AND HERE WE HAVE CROSS-MOTIONS FOR SUMMARY JUDGMENT FULLY BRIEFED.  THE ISSUE -- AGAIN, I UNDERSTAND I'M NOT EXACTLY OBJECTIVE -- BUT SEVERAL COURTS WITHIN THIS DISTRICT HAVE ANALYZED SIMILAR CLAIMS UNDER (E)(2) WITHIN THE LAST SEVERAL YEARS.

IT'S NOT AN ISSUE OF FIRST IMPRESSION.  IT'S NOT AN ISSUE OF TECHNICAL COMPLEXITY.  IT'S A STRAIGHTFORWARD QUESTION OF STATUTORY INTERPRETATION THAT WE BELIEVE THIS COURT IS MORE THAN COMPETENT TO DECIDE.

**THE COURT:**  I'M COMPETENT.  I JUST TEND TO THINK THAT HAVING THE DEPARTMENT OF LABOR'S POINT OF VIEW ON IT IS SOMETHING THAT THE COURT OF APPEALS TELLS ME I OBVIOUSLY OUGHT TO LOOK AT.  RIGHT?  AND I TAKE YOUR POINT IT MAY BE THAT THERE'S SOME DIMENSION TO THE AMOUNT OF TIME THAT IT TAKES TO COMPLETE A FULL RULEMAKING.  I KNOW THAT COULD BE LONG.  AND THAT'S SOMETHING I WILL HAVE TO TAKE INTO

```
 1   ACCOUNT IN DETERMINING WHETHER THE STAY CAN CONTINUE PAST
 2   SEPTEMBER, AND IF SO, HOW FAR.
 3              BUT IT'S -- WELL, I UNDERSTAND YOUR POSITION.
 4        MR. SANGSTER:  OUR CONCERN IS THAT THIS COULD
 5   JUST DRAG IN PERPETUITY, GIVEN THAT THE RULE-MAKING PROCESS
 6   IS FAR FROM THE MODEL OF EFFICIENCY OR CERTAINTY PAINTED BY
 7   MY COLLEAGUE, AND GIVEN WHAT WAITING SEVERAL MONTHS ON THE
 8   EVE OF A DECISION THAT COULD DISPOSE OF THE ENTIRE CASE
 9   WOULD DO TO THE MATTER, IT SEEMS LIKE WE WOULD BE SETTING
10   OURSELVES UP TO JUST PUT THE CASE ON ICE FOR SOME
11   INDEFINITE PERIOD OF TIME, WHEN, AGAIN, WE BELIEVE THIS
12   COURT HAS ENOUGH MATERIAL TO RULE ONE WAY OR THE OTHER
13   TODAY.
14        THE COURT:  ALL RIGHT.  MR. HARTINGER?
15        MR. HARTINGER:  WELL, YOUR HONOR, WE JUST THOUGHT
16   IT WAS THE RESPONSIBLE THING TO DO TO BRING IT TO THE
17   COURT'S ATTENTION THAT RULEMAKING FOR THE VERY FIRST TIME
18   SINCE THE FLSA BECAME APPLICABLE TO THE PUBLIC SECTOR IN
19   1987.  THIS IS THE FIRST RULING MAKING ON 7(E)(2).  AND
20   WE AGREE THAT JUST FROM AN EFFICIENCY STANDPOINT WE'RE
21   ALL -- AND I'VE BEEN IN OTHER COURTS WHERE GOT LOTS OF
22   LAWYERS STANDING AROUND SAYING:
23              "WELL, THERE'S A 1999 LETTER OPINION.
24         THERE'S A 2006 LETTER OPINION.  HOW DOES THIS.
25         SEGUE WITH THE OTHERS PARTS OF THE CODE OF
```

1             FEDERAL REGULATIONS?"
2             AND THEN, YOU HAVE THESE SEMANTICS ISSUES
3    ABOUT -- YOU KNOW, IT'S ALMOST LIKE:  HOW MANY ANGELS ARE
4    DANCING ON THE HEAD OF A PIN, IN TERMS OF WHICH WAY YOU
5    SWING.  AND YOU'VE GOT THE NARROW CONSTRUCTION DOCTRINE NOW
6    WIPED OUT BY ENCINO MOTORCARS DECISION.
7             SO FROM OUR PERSPECTIVE IT'S THROWN ALL OF
8    THOSE AUTHORITIES INTO QUESTION, BECAUSE NOW YOU DON'T
9    JUST -- YOU'RE UNABLE TO ANSWER THIS QUESTION, SO YOU
10   DEFAULT TO WHAT'S, YOU KNOW, THE NARROW CONSTRUCTION
11   AGAINST EMPLOYERS AND IN FAVOR OF EMPLOYEES.
12            SO TWO MONTHS IS NOT -- TWO TO THREE MONTHS IS
13   NOT PREJUDICIAL.  WE'LL KNOW, HOPEFULLY, WHETHER THEY ARE
14   GOING TO DO ANYTHING ON THIS TOPIC.  MAYBE THEY WON'T.  AND
15   THEN WE COME BACK AND YOU LIFT THE STAY AND WE GO FORWARD.
16            AND WE JUST THINK IT'S THE MOST EFFICIENT AND
17   RESPONSIBLE WAY TO PROCEED.
18       **THE COURT:**  ALL RIGHT.  AND, MR. SANGSTER, OTHER
19   THAN OBVIOUSLY FROM SOME -- IN SOME LEVEL YOU'D ALWAYS WANT
20   AN ANSWER, PRESUME THE ANSWER GOES YOUR WAY.
21       **MR. SANGSTER:**  OF COURSE.
22       **THE COURT:**  BUT OTHER THAN JUST WANTING TO MOVE
23   THE CASE FORWARD, IN GENERAL, WHAT IS THE SPECIFIC
24   PARTICULARIZED HARM THAT YOU CLAIM WOULD INURE FROM STAYING
25   THE CASE UNTIL SEPTEMBER?  WE'RE TALKING ABOUT ESSENTIALLY

1   TWO-AND-A-HALF TO THREE MONTHS.
2            **MR. SANGSTER:**  WELL, FIRST AND FOREMOST, OUR
3   CLIENTS WOULD CONTINUE TO BE DEPRIVED OF THE BACKPAY, AND
4   OTHER WAGES THAT THEY ARE DUE AND OWING, AS WELL AS THE
5   COMPENSATION THAT THEY ARE ENTITLED TO.
6            AND AS WE MENTIONED -- AND I UNDERSTAND FROM
7   THE PREVIOUS HEARINGS THE LABOR NEGOTIATIONS ARE OF LESS
8   INTEREST TO THE COURT.  BUT THE FACT OF THE MATTER REMAINS
9   THAT PENDING LITIGATION AGAINST THE CITY IS ONE OF THE
10  FACTORS CONSIDERED BY THE ARBITRATOR IN THE INTEREST
11  ARBITRATION THAT IS IN THE PROCESS OF BEING SCHEDULED
12  BETWEEN LOCAL 1401 AND THE CITY OF SANTA ROSA.
13           AND BY DELAYING A DECISION ON THIS MATTER, IT
14  ESSENTIALLY ALLOWS THE CITY TO BE IN A POSITION WHERE THEY
15  GET TO HAVE THEIR CAKE AND EAT IT, TOO.  THEY CAN USE THE
16  SPECTER OF PENDING LITIGATION FOR A JUSTIFICATION OF WHY
17  THEY CAN'T PROVIDE THE WAGE INCREASES OR OTHER BENEFITS
18  SOUGHT BY 1401, AND WAIT UNTIL AFTER THE INTEREST
19  ARBITRATION, AND THEN THIS COURT WOULD MAKE THE RULING THAT
20  IT WOULD.  AND POTENTIALLY THEY WOULD WIN.  WE FEEL
21  STRONGLY THAT WE WOULD PREVAIL.  BUT IT ALLOWS THEM TO
22  CONTINUE TO USE THE SPECTER OF THIS AWARD AS A
23  JUSTIFICATION FOR DENYING THE WAGE INCREASES AND OTHER
24  BENEFITS THAT 1401 AND THE CITY ARE CURRENTLY IN
25  DISAGREEMENT OVER.

| | |
|---|---|
| 1 | AND, AGAIN, I JUST -- ONE OTHER POINT IS OUR |
| 2 | OTHER MAIN ISSUE WITH WAITING FOR THE NOTICE OF PROPOSED |
| 3 | RULEMAKING AND ANY FURTHER ADDITIONAL GUIDANCE FROM THE DOL |
| 4 | IS SIMPLY THAT WHATEVER THE DOL -- LET'S SAY IT ACTUALLY IS |
| 5 | RELEVANT.  WHATEVER THEY DO PROMULGATE WOULD ONLY BE |
| 6 | PERSUASIVE TO THIS COURT. |
| 7 | THIS COURT IS STILL THE FINAL ARBITER OF THE |
| 8 | ACT AND SEVERAL DISTRICT COURT JUDGES HAVE -- |
| 9 | **THE COURT:**  GO AHEAD AND FINISH THE ARGUMENT |
| 10 | YOU'RE MAKING SO YOU CAN PUT IT ON THE RECORD. |
| 11 | **MR. SANGSTER:**  THANK YOU, YOUR HONOR.  HAVE |
| 12 | ALREADY ON A PLAIN STATUTORY INTERPRETATION ANALYSIS |
| 13 | DECIDED QUESTIONS OF HOLIDAY-IN-LIEU UNDER VERY SIMILAR |
| 14 | CIRCUMSTANCES, AND SO -- |
| 15 | **THE COURT:**  AND I BET EVERY ONE OF THEM WOULD |
| 16 | HAVE SAID IF THEY HAD THEIR DRUTHERS THEY WOULD HAVE WANTED |
| 17 | SOME BETTER GUIDANCE THAN WHAT THEY DID HAVE. |
| 18 | UNDERSTANDING THAT IT'S ONLY PERSUASIVE, BUT IT IS |
| 19 | SOMETHING THAT THE COURT OF APPEALS DIRECTS ME TO CONSIDER |
| 20 | AND WEIGH STRONGLY, DOESN'T IT? |
| 21 | **MR. SANGSTER:**  IF THE STATUTE IS AMBIGUOUS, YOU |
| 22 | ARE ENTITLED TO LOOK TO THESE REGULATIONS TO THE EXTENT |
| 23 | THEY CAN PERSUADE YOU.  I DON'T MEAN TO BEAT A DEAD HORSE. |
| 24 | OUR POSITION IS THE STATUTE IS NOT AMBIGUOUS.  BUT, OF |
| 25 | COURSE, THE COURT FEELS DIFFERENTLY. |

| | |
|---|---|
| 1 | **THE COURT:** ALL RIGHT. AND MR. HARTINGER, YOU |
| 2 | AGREE THAT I DON'T REALLY NEED TO GET INTO THE PRIMARY |
| 3 | JURISDICTION DOCTRINE AT ALL. WHAT I WOULD -- WHAT I |
| 4 | ASSUME YOU'RE SAYING IS THAT I COULD SIMPLY ENTER A STAY |
| 5 | UNDER MY INHERENT AUTHORITY AT LEAST TO PUT THINGS ON HOLD |
| 6 | UNTIL SEPTEMBER TO SEE WHAT THE RULE IS. |
| 7 | **MR. HARTINGER:** RIGHT. WE AGREE WITH THAT, YOUR |
| 8 | HONOR. |
| 9 | **THE COURT:** ALL RIGHT. OKAY. SUBMITTED? |
| 10 | **MR. HARTINGER:** YES, YOUR HONOR. |
| 11 | **THE COURT:** ALL RIGHT. SO I WILL GRANT THE |
| 12 | MOTION TO STAY WITH THESE PROVISOS. THE AUTHORITY THAT |
| 13 | APPLIES IS LANDIS, AND THEN THE CMAX NINTH CIRCUIT CASE |
| 14 | FROM 1962. |
| 15 | I CONSIDER THE FOLLOWING FACTORS: THE |
| 16 | POSSIBLE DAMAGE WHICH MAY RESULT FROM GRANTING THE STAY; |
| 17 | THE HARDSHIP OR INEQUITY THAT A PARTY MIGHT SUFFER IN BEING |
| 18 | REQUIRED GO FORWARD; AND THE ORDERLY COURSE OF JUSTICE |
| 19 | MEASURED IN TERMS OF THE SIMPLIFYING OR COMPLICATING OF |
| 20 | ISSUES OF PROOF OR ISSUES, PROOF AND QUESTIONS OF LAW, |
| 21 | WHICH COULD BE EXPECTED TO RESULT FROM A STAY. |
| 22 | HERE WHAT I'M ENVISIONING AND WHAT I WILL |
| 23 | ORDER IS A STAY UNTIL -- IS THERE A DATE THAT'S ACTUALLY |
| 24 | BEEN STATED FOR THE EXPECTED ISSUANCE OF THE NOTICE OF |
| 25 | PROPOSED RULEMAKING? |

1    **MR. HARTINGER:** ALL THEY SAID IS SEPTEMBER. SO
2    THAT'S WHY WE SUGGESTED EARLY OCTOBER, FIRST WEEK OF
3    OCTOBER OR SOMETHING WE WILL COME BACK.
4    **THE COURT:** ALL RIGHT. SO I WILL STAY THE CASE
5    UNTIL THE EARLIER OF OCTOBER 1ST OR ISSUANCE OF THE NOTICE
6    OF PROPOSED RULEMAKING, IF IT COMES SOONER.
7    AND I'LL DIRECT THE PARTIES TO FILE A JOINT
8    SUBMISSION SIMPLY NOTIFYING ME OF THE ISSUANCE OF THE
9    NOTICE OF PROPOSED RULEMAKING AND ATTACHING IT WITHIN 48
10   HOURS OF ITS ISSUANCE.
11   AND THEN WHAT I WOULD ENVISION IS THAT I WOULD
12   SET A CASE MANAGEMENT CONFERENCE SHORTLY AFTER THAT TO
13   ASSESS THE SUBSTANCE OF THE PROPOSED RULE AND DETERMINE THE
14   STATUS OF THE STAY, WHETHER IT SHOULD CONTINUE OR BE
15   LIFTED. AND, OTHERWISE, TALK ABOUT THE PLAN FOR THE
16   RESOLUTION OF THE CASE.
17   THE REASON FOR THE STAY IS THAT THERE'S, AS I
18   SUGGESTED, THERE'S A NOT INSUBSTANTIAL POSSIBILITY, IN MY
19   VIEW, THAT THE DOL'S PROPOSED RULEMAKING WILL CLARIFY THE
20   ISSUES THAT ARE PRESENTED TO THE COURT IN THIS CASE.
21   GIVEN THAT WE'RE TALKING ABOUT A STAY OF LESS
22   THAN THREE MONTHS, I FIND THAT ON BALANCE THERE IS NO
23   HARDSHIP OR INEQUITY THAT OUTWEIGHS THE SUBSTANTIAL
24   PROSPECT OF SIMPLIFYING AND CLARIFYING THE ISSUES AND LEGAL
25   INTERPRETATIONS THAT ARE AT ISSUE IN THIS CASE.

1           AND SO I FIND THAT THE COURT'S RESOURCES AND
2    THE PARTIES' RESOURCES WILL BE USED MOST EFFICIENTLY BY
3    THIS TEMPORARY PAUSE SO THAT WE CAN WAIT FOR THE PROPOSED
4    RULEMAKING, ASSESS IT, AND THEN DECIDE WHAT THE FURTHER
5    COURSE OF THE CASE WILL BE.
6           SO THAT'S THE ORDER.
7           **MR. HARTINGER:** SO WERE YOU SETTING, THEN -- I
8    HEARD YOU SAY OCTOBER 1 OR WHAT'S EARLIER.  BUT OCTOBER 1.
9    THEN, DID YOU WANT TO SET A TIME OR YOU'LL JUST ISSUE AN
10   ORDER?  I'M FREE, IT LOOKS, LIKE SO --
11          **THE COURT:** WELL, IF WE GET TO OCTOBER 1ST AND
12   NOTHING HAS ISSUED, THEN WHY DON'T YOU FILE A JOINT NOTICE
13   OF THAT, AND THAT WOULD PROMPT ME TO SET A CASE MANAGEMENT
14   CONFERENCE.
15          I DON'T WANT TO SET THE CONFERENCE BECAUSE IT
16   COULD BE SEPTEMBER 5TH, IN WHICH CASE I WOULD WANT TO SEE
17   YOU RIGHT AFTER THAT.  IT COULD BE, IF NOTHING HAPPENS
18   UNTIL BEGINNING OF OCTOBER, THEN I WOULD SET A FURTHER CASE
19   MANAGEMENT CONFERENCE RIGHT AFTER THAT.
20          BUT AT ANY RATE, YES.  WHEN -- AS SOON AS
21   EITHER WE HIT OCTOBER 1ST OR THE PROPOSED RULEMAKING
22   ISSUES, THE QUICKER YOU CAN JUMP INTO ACTION AND LET ME
23   KNOW THAT, THE QUICKER I CAN THEN SET A FOLLOWUP HEARING.
24          **MR. HARTINGER:** VERY WELL.
25          **MR. SANGSTER:** AND WE HAVE DATES, YOUR HONOR, I

```
 1   BELIEVE.  TRIAL SCHEDULED FOR SEPTEMBER 10TH, NUMBER OF
 2   DATES THAT ARE TRIGGERED BY THAT SEPTEMBER 10TH DATE.
 3   PRESUMABLY, THOSE ARE ALL VACATED.
 4             THE COURT:  THEY ARE.
 5             MR. SANGSTER:  OKAY.
 6             THE COURT:  YES, THEY ARE, INCLUDING THE TRIAL
 7   DATE.
 8             MR. SANGSTER:  UNDERSTOOD.  THANK YOU.
 9             THE COURT:  ALL RIGHT.
10             MR. HARTINGER:  THANK YOU, YOUR HONOR.
11             THE COURT:  YOU'RE WELCOME.
12              (THEREUPON, THIS HEARING WAS CONCLUDED.)
13   STENOGRAPHY CERTIFICATION
14             "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
15             AUGUST 8, 2018
               /S/KATHERINE WYATT
16   _____
```